# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TENNESSEE
# WESTERN DIVISION

| | |
|---|---|
| ORLANDO MORENO-ESPINOZA, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) No. 2:25-cv-03093-TLP-tmp |
| | ) |
| SCOTT LADWIG, | ) |
| | ) |
| Respondent. | ) |

## ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS

Petitioner Orlando Moreno-Espinoza, an alien detained in the West Tennessee Detention Facility in Mason, Tennessee, petitions for a Writ of Habeas Corpus under 28 U.S.C. § 2241. (ECF No. 8.) On December 4, 2025, the Court entered an Order directing Respondent to show cause why the Writ should not be granted and indicating that the Court would hold a hearing on the Petition. (ECF No. 4.) Respondent responded to the Show Cause Order (ECF No. 6), and Petitioner replied. (ECF No. 8.) The Parties consented, by email, to having the Court rule on the briefing without a hearing.

For the reasons stated below, the Petition is **GRANTED**.

## BACKGROUND

Petitioner, a Mexican citizen, has been living in the United States for an unknown period. (ECF No. 6 at PageID 25.) He filed a Deferred Action for Childhood Arrivals ("DACA") application I-821D on March 29, 2021. (*Id.*) On his I-213 form narrative, Petitioner claims to have attended school in the United States, suggesting his residence has been in the United States

for at least several years.  (ECF No. 6-3 at PageID 51.)  Petitioner was born in 2002 and is no longer a minor.  (ECF No. 6 at PageID 26.)

      Federal law enforcement detained Petitioner during a traffic stop on November 19, 2025.  (*Id.* at PageID 25–26.)  U.S. Immigration and Customs Enforcement ("ICE") took Petitioner into custody, and he remains in ICE custody at the West Tennessee Detention Facility in Mason, Tennessee.  (*Id.* at PageID 26; ECF No. 1-3 at PageID 13.)  On November 19, 2025, ICE served Petitioner with a Notice to Appear, charging him with being "an alien present in the United States who has not been admitted or paroled."  (ECF No. 6-1 at PageID 46–47.)  The Notice to Appear set a hearing for Petitioner on December 12, 2025.  (ECF No. 6 at PageID 26.)

      The Department of Homeland Security ("DHS") has not held a bond hearing for Petitioner.  (ECF No. 1-3 at PageID 14.)  Based on a new policy interpretation, DHS determined that he is subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A).  (ECF No. 6 at PageID 26.)  In July 2025, DHS, the Department of Justice ("DOJ"), and ICE issued the new policy on the detention of noncitizens.[1]  The new policy subjects noncitizens who have resided in the United States for a long time and who are apprehended in the interior of the country to mandatory detention.  In the past, immigration authorities would have afforded the noncitizens bond hearings under 8 U.S.C. § 1226(a).  Before this policy change, the immigration authorities did not consider these noncitizens "applicants for admission" subject to mandatory detention under § 1225(b)(2)(A).  *Godinez-Lopez v. Ladwig et al.*, No. 2:25-cv-02962, 2025 WL 3047889,

---

[1] American Immigration Lawyers Association, *ICE Memo: Interim Guidance Regarding Detention Authority for Applications for Admission*, AILA (July 8, 2025), https://www.aila.org/ice-memo-interim-guidance-regarding-detention-authority-for-applications-for-admission ("For custody purposes, these aliens are now treated in the same manner that 'arriving aliens' have historically been treated.") (last visited Dec. 15, 2025).

2

at *1–2 (W.D. Tenn. Oct. 31, 2025). They were instead detained under § 1226(a) and given a bond hearing. *Id.*

The Board of Immigration Appeals ("BIA") later upheld this new policy in the case of *Matter of Yajure Hurtado*. 29 I. & N. Dec. 216 (BIA 2025). And so immigration judges are now bound by precedent which denies noncitizens bond hearings under § 1225(b)(2)(A), even though those same noncitizens would have been eligible for a bond hearing under § 1226(a).

Petitioner, who has presumably resided in the United States for several years, now faces the prospect of extended detention in ICE custody. He asserts that the failure to provide him with a bond hearing violates 8 U.S.C. § 1226(a), his Fifth Amendment right to procedural due process, and his Fourth Amendment right to be free from unreasonable seizure. (ECF No. 1 at PageID 6.) He asks the Court to grant his Petition and to order a bond hearing, his immediate release from custody if a bond hearing is not provided, and attorney's fees and costs under the Equal Access to Justice Act. (*Id.* at PageID 7; ECF No. 8 at PageID 68.)

## **LEGAL STANDARD**

"Habeas relief is available when a person is 'in custody in violation of the Constitution or laws or treaties of the United States.'" *Lopez-Campos v. Raycraft*, 797 F. Supp. 3d 771, 776 (E.D. Mich. 2025) (quoting 28 U.S.C. § 2241(c)(3)).

Two sections of the Immigration and Nationality Act of 1952 ("INA") primarily govern the detention of noncitizens during removal proceedings. *See* 8 U.S.C. §§ 1225, 1226. The Supreme Court has already distinguished these two provisions in *Jenings v. Rodriguez*. *See* 583 U.S. 281, 289 (2018). The *Jennings* Court determined that the government may "detain certain aliens seeking admission into the country" under § 1225(b) while § 1226 "authorizes the Government to detain certain aliens *already in the country* pending the outcome of removal

proceedings." *Id.* (emphasis added). Relevant here, § 1225(b)(2)(A) governs mandatory detention of applicants for admission after an immigration officer has determined that they will not be entitled to admission.

> (b) Inspection of applicants for admission
> . . .
> (2) Inspection of other aliens
> (A) In general
> Subject to subparagraphs (B) and (C), in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title.

8 U.S.C. § 1225(b)(2)(A). An "applicant for admission" is a noncitizen "present in the United States who has not been admitted or who arrives in the United States." 8 U.S.C. § 1225(a)(1). "[A]dmission" and "admitted" are defined as "the lawful entry of the alien into the United States after inspection and authorization by an immigration officer." 8 U.S.C. § 1101(a)(13)(A).

On the other hand, § 1226(a) provides for discretionary detention. 8 U.S.C. § 1226(a).

> (a) Arrest, detention, and release
> On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States. Except as provided in subsection (c) and pending such decision, the Attorney General—
> (1) may continue to detain the arrested alien; and
> (2) may release the alien on—
> (A) bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General .
> . . .

8 U.S.C. § 1226(a). Known as the Laken Riley Act, subsection (c) of § 1226, provides for mandatory detention of noncitizens found inadmissible or deportable under certain provisions and who have been "charged with," "arrested for," "convicted of," or admit "having committed" certain listed crimes. 8 U.S.C. § 1226(c). "[N]oncitizens arrested and detained under § 1226 have a right to request a custody redetermination (i.e., a bond hearing) before an Immigration

Judge." *Lopez-Campos v. Raycraft*, 797 F. Supp. 3d 771, 777 (E.D. Mich. 2025) (citing 8 C.F.R. § 1236.1(c)(8), (d)(1)). "The IJ evaluates whether there is a risk of nonappearance or danger to the community." *Id.* (citing *Matter of Guerra*, 24 I. & N. Dec. 37, 40 (BIA 2006)). The Court now turns to the analysis of Petitioner's claims.

## ANALYSIS

The Court must determine whether § 1225(b)(2)(A) or § 1226(a) applies to Petitioner's detention. This is not an issue of first impression before this Court. And Respondent detaining Petitioner under § 1225(b) instead of § 1226(a) is not an isolated event. Indeed, the Court recently considered this same question and held that "§ 1226 governs the arrest and detention of an alien without a criminal history who has been residing in the United States." *See, e.g.*, *Monge-Nunez*, No. 2:25-cv-03043-TLP-atc, 2025 WL 3565348, at *6 (W.D. Tenn. Dec. 12, 2025); *Padilla-Ugsha v. Ladwig*, No. 2:25-cv-03045-TLP-cgc, 2025 WL 3638007 (W.D. Tenn. Dec. 15, 2025). Because of the increasing frequency of these habeas petitions, other district courts in this circuit have also been asked to consider which statutory provision governs. Most of them have determined that § 1226(a) fits in this scenario. *See, e.g.*, *Godinez-Lopez*, No. 2:25-cv-02962-SHL-atc, 2025 WL 3047889 (W.D. Tenn. Oct. 31, 2025); *Lopez-Campos v. Raycraft*, 797 F.Supp.3d 771 (E.D. Mich. 2025). Other district courts across the country have concluded the same. As one court just observed:

> By a recent count, the central issue in this case – the administration's new position that *all* noncitizens who came into the United States illegally, but since have been living in the United States, *must be detained* until their removal proceedings are completed – has been challenged in at least 362 cases in federal district courts. The challengers have prevailed, either on a preliminary or final basis, in 350 of those cases decided by over 160 different judges sitting in about fifty different courts spread across the United States. Thus, the overwhelming, lopsided majority have held that the law still means what it always has meant.

5

*Barco Mercado v. Francis*, No. 25-cv-6582, 2025 WL 3295903, at *4 (S.D.N.Y. Nov. 26, 2025) (collecting cases). But the Sixth Circuit has yet to decide whether §§ 1225(b) or 1226(a) applies under these circumstances.

With that in mind, the Courts analysis here comes in three parts.[2] The Court first considers whether it should require Petitioner to exhaust his administrative remedies before hearing this claim. It then uses statutory interpretation to determine which section applies. And finally, the Court addresses procedural due process. And for the reasons stated below, the Court finds that § 1226(a) is the appropriate statute under which Petitioner should be considered detained and that he is entitled to a bond hearing. The Petition therefore is **GRANTED**.

**I.    Administrative Exhaustion**

Exhaustion is required when mandated by Congress. *See McCarthy v. Madigan*, 503 U.S. 140, 144 (1992). The Parties agree that administrative exhaustion is not statutorily required here but disagree on whether the Court should apply the doctrine of prudential exhaustion. (*Compare* ECF No. 6 at PageID 27–28, *with* ECF No. 8 at PageID 57–59.) The Court agrees that Congress has not explicitly mandated exhaustion in this context. When Congress has not explicitly spoken, whether to require exhaustion of administrative remedies lies within "sound judicial discretion." *McCarthy*, 503 U.S. at 144. In exercising that discretion, the Supreme Court has stated that "federal courts must balance the interest of the individual in retaining prompt access to a federal judicial forum against countervailing institutional interests favoring

---

[2] Because the Court finds that Petitioner is entitled to the discretionary bond process under § 1226 as a matter of statutory interpretation and procedural due process, it need not consider Petitioner's Fourth Amendment claim. (*See* ECF No. 6 at PageID 43–44; ECF No. 8 at PageID 67.)

exhaustion." *Id.* at 146. Those institutional interests are "protecting administrative agency authority and promoting judicial efficiency." *Id.* at 145.

The *McCarthy* Court also identified situations in which the interest of the individual weighs heavily against the institutional interests. *See id.* at 146–49. Relevant here, "an administrative remedy may be inadequate where the administrative body . . . has otherwise predetermined the issue before it." *Id.* at 148 (citing *Gibson v. Berryhill*, 411 U.S. 564, 575, n. 14 (1973); *Houghton v. Shafer*, 392 U.S. 639, 640 (1968) (in view of Attorney General's submission that the challenged rules of the prison were "validly and correctly applied to petitioner," requiring administrative review through a process culminating with the Attorney General "would be to demand a futile act"); *Association of National Advertisers, Inc. v. FTC*, 627 F.2d 1151, 1156–1157 (1979) (bias of Federal Trade Commission chairman), *cert. denied*, 447 U.S. 921 (1980); *Patsy v. Florida International University*, 634 F.2d 900, 912–913 (5th Cir. 1981) (en banc) (administrative procedures must "not be used to harass or otherwise discourage those with legitimate claims"), *rev'd on other grounds*, *sub nom. Patsy v. Board of Regents of Florida*, 457 U.S. 496 (1982)); *See also Herr v. U.S. Forest Serv.*, 803 F.3d 822–23 (6th Cir. 2015) ("If administrative review would come to naught, if any efforts before the agency would be pointless, the courts do not insist that litigants go through the motions of exhausting the claim anyway.") (internal quotations omitted).

The Court agrees with Petitioner that the BIA's decision in *Matter of Yajure Hurtado*, which is binding on immigration judges, makes exhausting administrative remedies futile here. (ECF No. 8 at PageID 57–59;) *see* 29 I. & N. Dec. at 228 (holding that aliens "who surreptitiously cross into the United States remain applicants for admission until and unless they are lawfully inspected and admitted by an immigration officer" because "[r]emaining in the

United States for a lengthy period of time following entry without inspection, by itself, does not constitute an 'admission'"). To exhaust his remedies here, Petitioner would appeal to the same BIA. So the decision on whether to provide Petitioner with a bond hearing has been predetermined.

What is more, the BIA cannot review constitutional challenges. So Petitioner can only have his due process claim reviewed in federal court. *See Sterkaj v. Gonzales*, 439 F.3d 273, 279 (6th Cir. 2006). Requiring exhaustion here would not further the ends of judicial efficiency and protecting administrative authority because it would simply delay the resolution of Petitioner's legal questions. Petitioner's individual interest in having prompt access to this forum outweighs any institutional interests at stake. Another practical reason supports this conclusion. "Bond appeals before the BIA, on average, take six months to complete." *Lopez-Campos v. Raycraft*, 797 F.Supp.3d 771, 779 (E.D. Mich. 2025) (citing *Rodriguez v. Bostock*, 779 F. Supp. 3d 1239, 1245 (W.D. Wash. 2025)).

Requiring Petitioner to wait six months—or *any* length of time for that matter—so that the BIA can address an issue it has already decided creates hardship for hardship's sake. The Court declines to impose such a result here.[3]

---

[3] Respondent points the Court to a line of cases out of the Northern District of Ohio that require immigration habeas petitioners to exhaust their bond-related administrative remedies before considering their habeas claims. (ECF No. 10 at PageID 27 (citing *Monroy Vaillalta v. Greene*, No. 25-1594, 2025 WL 2472886, at *2– 3 (N.D. Ohio Aug. 5, 2025); *Hernandez Torrealba v. U.S. Dep't of Homeland Sec.*, No. 25-1621, 2025 WL 2444114, at *8–12 (N.D. Ohio Aug. 25, 2025); *see also Laguna Espinoza v. Dir. of Detroit Field Off., U.S. Immigration & Customs Enforcement*, No. 25-2107, 2025 WL 2878173, at *2–3 (N.D. Ohio Oct. 9, 2025)). The Court has reviewed those cases. And finds the reasoning unpersuasive for the reasons discussed above.

## II.     Statutory Interpretation

The Parties disagree over whether § 1225(b)(2)(A) or § 1226(a) should govern Petitioner's detention.  And they take conflicting views on how to interpret these sections.  Pertitioner argues that § 1225(b)(2)(A) does not apply to him and that § 1226(a) does for several reasons.  (ECF No. 8 at PageID 59–64.)  He asserts that Respondent's interpretation of § 1225(b)(2)(A) strips the words "seeking admission" of independent meaning by assuming that all "applicants for admission" are necessarily seeking admission.  (*Id*. at PageID 59–60, 61.)  He then argues that Respondent's interpretation ignores the subject matter of § 1225, which deals with immigrants actively crossing the border or arriving at a port of entry.  (*Id.* at PageID 60.)  Petitioner notes that the Supreme Court in *Jennings* distinguished between § 1225 and § 1226 by function and population, with § 1225 covering individuals arriving at the border and § 1226 functioning as the general detention authority for noncitizens inside the country.  (*Id.* at PageID 61–62.)  He also points out that the text of § 1226 allows the Attorney General to "arrest or detain" any noncitizen "pending a decision on whether the alien is to be removed," which describes Petitioner's current situation.  (*Id.* at PageID 62.)

Petitioner argues that, given the overlap in the populations of noncitizens that both § 1225 and § 1226 cover—noncitizens present in the United States without being admitted— § 1226 should govern here because it is the specific provision authorizing detention of noncitizens apprehended in the interior of the country.  (*Id*. at PageID 63.)  Petitioner further argues that Respondent's reading of § 1225(b)(2)(A) makes § 1226(c) superfluous because it requires mandatory detention of individuals found inadmissible under § 1182(a)(6)(A) who have also committed another crime.  (*Id*. at PageID 63–64.)  If § 1225(b)(2)(A) requires the mandatory

9

detention of all noncitizens found inadmissible under § 1182(a)(6)(A), then § 1226(c)(1)(E)(i) has no independent function. (*Id.*)

Petitioner continues by asserting that the BIA's decision in *Matter of Yajure Hurtado* was wrongly decided. And the Supreme Court's decision in *Loper Bright* requires the Court to come to its own independent interpretation of the statutory framework without deference to the BIA. (*Id.* at PageID 64–65.) He points to his prior textual arguments as evidence that his interpretation of the INA is the most persuasive. (*Id.*)

Petitioner makes a constitutional avoidance argument, asserting that his interpretation of the INA eliminates any potential constitutional concerns with indefinite detention of noncitizens. (*Id.* at PageID 65.) Finally, he cites the growing number of district courts, including this one, that have decided this same legal question in favor of the petitioner. (*Id.* at PageID 65.)

Respondent argues that § 1225's text is unambiguous, controls here, and that other districts have adopted the Respondent's position. (ECF No. 6 at PageID 29–37.) The thrust of Respondent's interpretation tracks the BIA's recent opinion in Matter of Yajure Hurtado. Respondent asserts that an "applicant for admission" is any unadmitted noncitizen in the United States. And since Petitioner is an applicant for admission, he is necessarily seeking admission.[4] As a result, says Respondent, Petitioner is properly detained under § 1225(b)(2)(A) pending further removal proceedings under § 1229a. (*Id.*) And this reading of § 1225 aligns with the policy goal of avoiding rewarding noncitizens that evade examination upon entry into the country. (*See id.* at PageID 34–36.)

---

[4] According to Respondent, the INA recognizes only two classes of unadmitted noncitizens that are not seeking admission: (1) "someone who withdraws his application for admission and 'depart[s] immediately from the United States'" and (2) "someone who agrees to voluntarily depart 'in lieu of being subject to proceedings under § 1229a . . . or prior to the completion of such proceedings.'." (*Id*. at PageID 30–31.)

Respondent also argues that § 1225 does not contradict or render superfluous § 1226. (*Id.* at PageID 37–38.) He argues that 1226(a) applies to any alien who is not an "applicant for admission." (*Id.* at PageID 37.) He asserts that, although the two provisions overlap, § 1226(c) independently requires mandatory detention for any admitted noncitizen found deportable under certain provisions of § 1227(a)(2), inadmissible noncitizens who were admitted in error, and noncitizens who are crewmen or stowaways. (*Id.* at PageID 38–40.) He continues that § 1226(c) limits the circumstances in which noncitizens who commit certain offenses can be paroled as compared to those detained under Section 1225(b)(2). (*Id.* at PageID 38–39.)

Courts should construe statutes "so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant." *Corley v. United States*, 556 U.S. 303, 314 (2009) (quoting *Hibbs v. Winn*, 542 U.S. 88, 101 (2004)). In doing so, courts must give each word within the statute "'its ordinary, contemporary, common meaning,' while keeping in mind that 'statutory language has meaning only in context.'" *Kentucky v. Biden*, 23 F.4th 585, 603 (6th Cir. 2022) (citation modified) (citing *Star Athletica, L.L.C. v. Varsity Brands, Inc.*, 137 S. Ct. 1002, 1010, (2017); *Graham Cnty. Soil & Water Conserv. Dist. v. United States ex rel. Wilson*, 545 U.S. 409, 415 (2005); *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 356 (2013)). And courts "presume that [the] legislature says in a statute what it means and means in a statute what it says there." *Connecticut Nat. Bank v. Germain*, 503 U.S. 249, 253–54 (1992). And "[b]arring unusual cases, '[s]tatutory definitions control the meaning of statutory words.'" *Maldonado Bautista et al. v. Santacruz Jr. et al.*, No. 5:25-cv-01873-SSS-BFM, 2025 WL 3289861, at *8 (C.D. Cal. Nov. 20, 2025) (quoting *Lawson v. Suwannee Fruit & S.S. Co.*, 336 U.S. 198, 201 (1949)).

For the reasons below, these principles resolve the dispute in Petitioner's favor. Although certain legal principles overlap, the Court first addresses the plain language before considering the statutory framework.  *See Ross v. Blake*, 578 U.S. 632, 638 (2016).

   a. **Interpretation of the Plain Text**

As noted above, the Parties disagree over whether § 1225(b)(2)(A) or § 1226(a) should govern Petitioner's detention.  Detention under 1225(b)(2)(A) applies "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted[.]"  8 U.S.C. § 1225(b)(2)(A).  This means the alien must be an "applicant for admission" who is "seeking admission" and "not clearly and beyond a doubt entitled to be admitted."

For starters, as the *Maldonado Bautista* court reasoned, the plain text of the statutory definition of "applicants for admission" does not support its application to Petitioner. 2025 WL 3289861 at *8–9.  An "applicant for admission" is defined in § 1225(a)(1) as "[a]n alien present in the United States who has not been admitted . . . ," and "admitted" is defined in § 1101(a)(13)(A) as noncitizens who have not "lawful[ly entered] into the United States *after inspection and authorization by an immigration officer*."  8 U.S.C. § 1225(a)(1); 8 U.S.C. § 1101(a)(13)(A) (emphasis added).  So the definition of "applicants for admission" can be read as noncitizens who have not "lawful[ly entered] into the United States after inspection and authorization by an immigration officer."  This definition requires applicants for admission to have undergone inspection and authorization by an immigration officer.  It does not fit Respondent's definition of "applicants for admission," which includes noncitizens who have been residing in the interior of the country for a long time without inspection or authorization by an immigration officer.

12

Respondent also ignores several words and phrases within § 1225(b)(2)(A) in its interpretation of the provision. *See Godinez-Lopez v. Ladwig et al.* No. 2:25- CV-02962, 2025 WL 3047889, at *4–5 (W.D. Tenn. Oct. 31, 2025). "If possible, every word and every provision is to be given effect." Antonin Scalia and Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 174 (2012). Section 1225(b)(2)(A) states, "[I]n the case of an alien who is an applicant for admission, if the *examining immigration officer* determines that an alien *seeking* admission is *not clearly and beyond a doubt entitled to be admitted*, the alien shall be detained for a proceeding under section 1229a of this title." 8 U.S.C. § 1225(b)(2)(A) (emphasis added). As Petitioner points out, he was not seeking admission at the time of his apprehension. (*See* ECF No. 8 at PageID 60.) An examining immigration officer did not decide whether he was "not clearly and beyond a doubt entitled to be admitted." (*See id.*) The language of § 1225(b)(2)(A) points to a noncitizen arriving at the border or port of entry and a candidate for expedited removal. It does not coherently apply to a noncitizen detained far from the border years after entry.

Respondent asserts that almost all noncitizens who entered the country unlawfully were "seeking admission," no matter how or when ICE arrested them or how long they lived in the United States. (*See* ECF No. 6 at PageID 31.) He ignores the language of § 1225(b)(2)(A) which suggests active conduct by the noncitizen. That statute is written using the progressive verb tense. So under § 1225(b)(2)(A), to be mandatorily detained, the noncitizen must be "seeking admission," not simply residing in the country after entering it unlawfully. The Court finds that this language suggests action and that to fall under § 1225(b)(2)(A), the noncitizen must be *actively* seeking admission. The Court's reading differs from Respondent's by recognizing the class of noncitizens that did not lawfully enter the United States—subject to

13

removal proceedings as a result—but who are nonetheless not seeking admission. That the INA provides two examples of noncitizens who are not seeking admission does not preclude the existence of more classes of noncitizens that do not fall under § 1225. (*See id.* at PageID 30–31.)

The plain meaning of § 1226 better captures Petitioner's situation. It applies to the "apprehension and detention of aliens," providing that, upon "a warrant issued by the Attorney General, an alien may be arrested or detained pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a). Petitioner was apprehended in the interior of the country after residing here for presumably, several years. Thus the Attorney General has the discretion under this section to "continue to detain [him]" or she "may release [him] on bond." (*Id.*) She may not, though, deny him the bond hearing to which he is entitled. *See* 8 C.F.R. § 1236.1(c)(8), (d)(1).

    b.  **Interpretation of the Statutory Framework**

The titles of the provisions here suggest that Petitioner's interpretation of the statutory framework is correct. *See Godinez-Lopez v. Ladwig et al.*, No. 2:25-cv-02962, 2025 WL 3047889, at *4 (W.D. Tenn. Oct. 31, 2025). "[T]he title of a statute in the heading of a section are tools available for the resolution of a doubt" about the statute's meaning. *Dubin v. United States*, 599 U.S. 110, 121 (2023). The title of § 1225 is "Inspection by immigration officers; expedited removal of inadmissible arriving aliens; referral for hearing," and the title of § 1226 is "Apprehension and detention of aliens." 8 U.S.C. §§ 1225–26. Section 1225's title envisions *arriving* aliens placed in *expedited removal*, but Petitioner was detained far from the border presumably several years after he had crossed it. (ECF No. 6 at PageID 25; ECF No. 6-3 at PageID 61.) The title of § 1225 therefore seems inapplicable to noncitizens in Petitioner's shoes,

14

but the title of § 1226 seems spot on.  Petitioner is a noncitizen who was apprehended in the interior of country and then detained.

A look at the subject matter of § 1225 further undercuts Respondent's interpretation of the statutory framework.  Section 1225 describes the process of inspecting and removing immigrants who are actively crossing the border or entering at a port of entry.  *See Jennings v. Rodriguez*, 583 U.S. 281, 287 (2018) ("That process of decision [described in § 1225] generally begins at the Nation's borders and ports of entry, where the Government must determine whether an alien seeking to enter the country is admissible."); 8 U.S.C. § 1225(b)(2)(A).  It explicitly applies to "an alien who . . . has not affirmatively shown . . . that the alien has been physically present in the United States continuously for the 2-year period immediately prior to the date of the determination of inadmissibility . . . ."  8 U.S.C. § 1225(b)(1)(A)(iii)(II).  It makes little sense to apply § 1225 to Petitioner who has resided in the United States a long time and is not actively entering the country.

The existence of § 1226(c) also undercuts the Respondent's position here because Respondent's interpretation of the INA makes § 1226(c) largely superfluous.  *See Godinez-Lopez v. Ladwig et al.*, No. 2:25- cv-02962, at *5 (W.D. Tenn. Oct. 31, 2025).  "In Section 1226(c), the INA describes people who would otherwise be eligible for bond under Section 1226(a), but are rendered ineligible for bond because of their criminal histories."  *Monge-Nunez v. Ladwig*, No.  2:25-cv-03043-TLP-atc, 2025 WL 3565348, at *6 (W.D. Tenn. Dec. 12, 2025) (internal quotations omitted).  Subsections 1226(c)(1)(E)(i)–(ii) provide for mandatory detention of certain noncitizens.  But they apply only to those noncitizens who both entered the country without inspection under 8 U.S.C. § 1182(a)(6)(A), (C), and (7) and are also "charged with, . . . arrested for, . . . convicted of . . ." certain crimes.  8 U.S.C. § 1226(c)(1)(E)(i)–(ii).  And so, to

15

read § 1225(b)(2)(A) to make, essentially, every noncitizen that did not lawfully enter the country subject to mandatory detention (as Respondent argues) would strip 1226(c) of meaning. Further, Congress only recently added subsection 1226(c)(1)(E) to § 1226 with the Laken Riley Act. Pub. L. No. 119-1, 139 Stat. 3 (2025). Respondent's interpretation also asks this Court to presume Congress pointlessly amended the statute with a largely redundant provision when it most recently considered it. *See Lopez-Campos Campos v. Raycraft*, 797 F. Supp. 3d 771, 783–84 (E.D. Mich. 2025) (quoting *Maldonado v. Olsen*, No. 25-cv-3142, 2025 WL 237441, *12 (D. Minn. Aug. 15, 2025)). The Court declines to do so.

Respondent's arguments that his interpretation of § 1225(b)(2)(A) does not render § 1226(c) superfluous are unavailing. Respondent interprets 1226(c) to require mandatory detention of only certain classes of noncitizens that fall outside of those mandatorily detained under § 1225(b)(2)(A). (ECF No. 6 at PageID 37–38.) In effect, Respondent asks the Court to read the language of § 1226(c)(1)(A)–(E)(i), which covers noncitizens deportable or inadmissible under several statutory provisions, to only apply to (1) noncitizens already admitted and now deportable, (2) noncitizens admitted in error; and (3) stowaways and crewmembers. (*Id.*) This reading contradicts the plain language of § 1226(c), which applies to all inadmissible noncitizens on its face and does not reference stowaways or crewmembers. *See* 8 U.S.C. § 1226(c). Respondent therefore asks the Court to read § 1226(c) narrowly as well as ignore the language of § 1225(b)(2)(A), which limits its reach to applicants for admission who have been encountered at the border. Instead, this Court chooses to give the language of each provision the effect its plain meaning requires—by limiting § 1225(b)(2)(A) in its application to border encounters and by applying § 1226(c) broadly to criminal noncitizens.

16

Given the plain text and structure of the INA and its recent amendment with the Laken Riley Act, the Court finds § 1226 governs the arrest and detention of a noncitizen without an apparent criminal history who has been residing in the United States for several years. Petitioner is therefore subject to the discretionary bond process under § 1226 and entitled to a bond hearing.

### III. Due Process

Because the Court has found that § 1226(a) applies to Petitioner's detention, he is owed the process given to him under the statute. *See, e.g. Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 140 (2020) ("[A]n alien in [Petitioner's] position has only the rights . . . that Congress has provided by statute."). Petitioner alleges that Respondent violates his due process rights by continuing to detain him without a bond hearing. (ECF No. 1 at PageID 6.) Respondent counters that because Petitioner complains that he is detained under the wrong statute, even if his detention is unlawful, it is not unconstitutional. Respondent notes that Petitioner "has been given notice of the charges against him, has access to counsel, may attend hearings with an immigration judge, can request bond at that time, and has the right to appeal the denial of any request for bond." (ECF No. 6 at PageID 42–43 (citing 8 U.S.C. § 1362).) Put simply, Respondent asserts that § 1225(b)(2)(A) has already afforded Petitioner the due process that Congress chose to provide him. (*Id*. at 40–43.)

The Fifth Amendment of the U.S. Constitution protects every person from being "deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. "The Due Process Clause extends to all 'persons' regardless of status, including non-citizens (whether here lawfully, unlawfully, temporarily, or permanently)." *Lopez-Campos*, 797 F. Supp. 3d 771, 784 (E.D. Mich. 2025) (citing *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001)). "In the context of

17

civil immigration detention, the Sixth Circuit applies the balancing test from *Mathews v. Eldrige*, 424 U.S. 319 (1976), to evaluate the level of process owed a noncitizen." *Godinez-Lopez v. Ladwig et al.*, No. 2:25-cv-02962, at *6 (W.D. Tenn. Oct. 31, 2025) (citing *United States v. Silvestre-Gregorio*, 983 F.3d 848, 852 (6th Cir. 2020)). Under the *Matthews* test, this Court considers (1) "the private interest that will be affected by the official action." (2) "the risk of an erroneous deprivation of such interest," and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mattews v. Eldridge*, 424 U.S. 319, 335 (1976).

All three factors weigh in Petitioner's favor. He has a strong liberty interest in being free from physical detention. *See Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004); *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). The risk of erroneous deprivation is high here considering that Respondent and the BIA's current position is to afford him no bond hearing whatsoever. And bond hearings are a significant procedural safeguard to balance the Government's interest in immigration enforcement against individual liberties. So the Court finds that the Government's interest in detaining Petitioner without that procedural safeguard does not outweigh Petitioner's liberty interest or the risk of erroneous deprivation. This is all the more true because Petitioner has no meaningful opportunity for an immigration judge to consider whether he is a danger to society or a flight risk. And the fact that Petitioner has been living in the United States for the past several years with no apparent criminal history further tips the scales in his favor.

Consequently, Petitioner's detention without a bond hearing violated his liberty interest. Petitioner is entitled to a bond hearing before an immigration judge. The Court therefore **GRANTS** the Petition.

### IV.     Attorney's Fees and Costs

Petitioner seeks attorney's fees and costs under the Equal Access to Justice Act, 28 U.S.C. § 2412.  (ECF No. 1 at PageID 17.)  Section 2412(b) allows a court to award "reasonable fees and expenses of attorneys, in addition to the costs which may be awarded pursuant to subsection (a), to the prevailing party in any civil action brought by or against the United States . . . ."  28 U.S.C. § 2412(b).  Federal Rule of Civil Procedure 54 requires that claims for attorney's fees and related expenses be made by motion.  Fed. R. Civ. P. 54(d)(2)(A).  Petitioner must therefore move under Local Rule 54.1(b) to seek attorney's fees and costs.  *See* Loc. R. 54.1(b).

### CONCLUSION

Immigration policies have long been subject to the changing tides of government.  But those changing tides cannot usurp statutory authorization.  For the reasons above, the Petition is **GRANTED**.  Respondent is **ORDERED** to provide Petitioner with a bond hearing under 8 U.S.C. § 1226(a) and 8 C.F.R. § 1236.1(c)(8), (d)(1) within seven days of the entry of this Order and to release Petitioner pending the bond hearing.  Respondent is further **ENJOINED** from pursuing Petitioner's detention under 8 U.S.C. § 1225(b)(2)(A).

**SO ORDERED**, this 19th day of December, 2025.

        s/Thomas L. Parker
        THOMAS L. PARKER
        UNITED STATES DISTRICT JUDGE